## Larue v. Redmon, et al.

(Decided February 15, 1916.)

### Appeal from Larue Circuit Court.

1. Schools and School Districts—Taxation—Taxation in Aid of Common Schools.—Section 157 of the Constitution of this State does not limit the rate of taxation which may be levied for common schools without a vote of the people to be affected.

2. Statutes—Constitutional Law.—An act of the Legislature purporting to amend sections of the statute is not unconstitutional because the title thereto designating the act as one amending the sections referred to and naming them in the title, and such title thus referring to the sections to be amended does not violate section 51 of the Constitution, provided the subject matter contained in the act is germane to the subjects treated of in the sections amended.

3. Schools and School Districts—Taxation—Taxation in Aid of Common Schools—Elections.—It is competent under the Constitution for the Legislature in this State to create school districts, including graded common school districts, and to fix a rate of taxation to be collected in such districts without a vote of the people in the district either upon forming the same or fixing the rate of taxation; and it is, therefore, competent for the Legislature, by an act passed subsequent to the formation of such school district, under section 4464 of the Kentucky Statutes, by a vote of the people, to increase the rate of taxation, which may be collected in such district for the purposes of the graded common school without an acceptance of such increased rate by a vote of the people.

4. Constitutional Law—Impairment of Obligation of Constract.— The Constitutional inhibition against the impairment of the obligation of contracts has no application to the impairment of any obligations growing out of municipal or quasi municipal charters.

5. Schools and School Districts—Taxation—Taxation in Aid of Common Schools—Legislature May Increase Rate.—Where in 1905 a graded common school district was formed by an election held pursuant to the provisions of section 4464 of the Kentucky Statutes, and a rate of taxation was then established by the election, it is competent for the Legislature to subsequently increase the rate of taxation then voted by the district, both ad valorem and poll taxes, and without a submission of the question of increasing the taxes to a vote of the people.

WILLIAMS & HANDLEY, CHARLES WILLIAMS, O. M. MATHER and L. B. HANDLEY for appellant.

GEORGE K. HOLBERT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS.—Affirming.

In 1905 there was established, under the provisions of Section 4464 of the Kentucky Statutes, the Hodgenville Graded Common School District No. 32, which included the city of Hodgenville, together with some contiguous territory. The order calling the election as entered by the county court, provided for the collection of an *ad valorem* tax for the purpose of the contemplated graded school of forty cents on the one hundred dollars' worth of property situated therein and the collection of no poll tax. By an act of the legislature at its 1914 session, the schools law, with reference to graded schools, was amended and a part of the amendment (being a proviso to Section 4482 of the Kentucky Statutes), is as follows:

"PROVIDED, That after July 1, 1914, any graded common school which has been regularly voted and organized and which does not levy as much as fifty cents on the one hundred dollars' worth of taxable property, shall have the power, and their charters are hereby amended so as to empower them to levy any rate of tax for operating expenses not to exceed fifty cents on each one hundred dollars' worth of taxable property, and one dollar and fifty cents poll tax, and that their boards of education. be and the same are hereby authorized to exercise this power when, in their judgment, the demands of the school make it expedient." (Section as amended by act 1914, 162.)

After the taking effect of this amendatory act, the trustees of Hodgenville Graded Common School District No. 32, by appropriate orders, levied an *ad valorem* and poll tax upon the property and each poll in the district in compliance with the amendment, which in the present case was an additional ten cents *ad valorem* tax on each one hundred dollars' worth of taxable property, and in addition levied a poll tax of one dollar and fifty cents on each poll in the district.

Questioning the right of the trustees to do this, and assailing the validity of the amendment, the appellant, for himself and all other tax payers in the district, filed this suit against the district and the trustees, and the tax collector of the district, seeking to enjoin the collection of any of the taxes which had been levied pursuant to the amendatory act. The assault made upon this amendment is best stated in the language of the petition, as follows:

"He says that the said pretended order and levy and the said act of the General Assembly are in violation of the rights of this plaintiff and the other white tax payers in said district as guaranteed to them under the Constitution of the Commonwealth of Kentucky, and the Constitution of the United States of America, and that the attempted increase of ten cents on each one hundred dollars' worth of taxable property, and the attempted levy of one dollar per capita tax on the male inhabitants of said district over the age of twenty one years, are without warrant of law and are null and void."

Particularizing, it is insisted that the amendatory act is unconstitutional because the title thereof fails to comply with the requirements of section 51 of the Constitu-

tion, and because it violates the provisions of sections 2, 19, 157, and 184 of that instrument. Otherwise, it seems to be conceded, that both the statute and levy complained of are unobjectionable.

The title of the act is as follows:

"An act to amend Sections 4464, 4464a, 4480, 4482, Article 10, Kentucky Statutes, Carroll's Edition 1909, and repealing Section 4464b thereof, and amending said Article 10, of said statutes, relating to schools, by adding thereto Section 4500b."

The purposes of Section 51 of the Constitution in requiring that an act of the legislature shall relate to but one subject and it shall be stated in the title, is to place it so that the title of the act should not be a means of deception to either the members of the legislature or the public at large; but that it should reasonably inform them of the contents of the act by a reference to the title; and it is the uniform rule wherever this constitutional provision prevails, that if the subject matter of the act is germane to the subject stated in the title the requirements of the constitutional provision would be fully met. Pennington v. Woolfork, 79 Ky., 13; Ex Parte, City of Paducah, 125 Ky., 514, and many other authorities which could be cited.

According to the opinions of the court, *supra,* it is sufficient to amend an act by reference only to the sections of the Kentucky Statutes proposed to be amended, provided the amendatory matter was germane to the subject treated of in the section amended. Indeed, this statement of the rule so completely fulfills the requirement of the section of the Constitution being considered, as well as the purpose of such requirement, that we would unhesitatingly so determine if the question was one of first impression. All of the sections referred to in the title of the amendment here involved treat exclusively of graded common schools in this Commonwealth and the subject matter of the proviso in the amendatory act is unquestionably germane to the general subject of graded common schools. We, therefore, find no merit in this contention of appellant.

It is attempted to be shown that the 1914 act in some mysterious and to us invisible manner violates the Federal Constitution, and Section 19 of our Constitution, in that it impairs vested rights or impairs the obligations of a contract. Between what persons, and concerning

what particular subject matter this supposed contract exists whereby vested rights were created, is not by any means clear, nor is it clear as to when or how such supposed contract was entered into. Surmising, however, that this supposed contract in some manner grew out of the election in 1905, and assuming for the purpose of argument only, that the voters at that election contracted with somebody to pay an *ad valorem* tax upon their property of forty cents only on the one hundred dollars' worth thereof, and in the same manner obligated themselves to pay no poll tax, for graded schools in the district, the appellant's contention would still be untenable, because the supposed contract would be only an immunity privilege, or gratuity entered into at the time by this mysterious somebody with the voter and tax payer by this supposed contract to exempt him from being taxed for a purpose which the Constitution not only permits but commands the legislature by appropriate legislation to prescribe, this being "an efficient system of common schools throughout the State." (Sec. 183, Constitution.)

If it should be insisted that the immunity from the collection of the taxes sought to be enjoined, was brought about by the incorporation of the graded school district created by the election, and thereby vesting in the tax payer a right to it which cannot be impaired, a successful answer to this would be: First: That the statute of 1856 (being sec. 1987 of the Ky. Statutes) and section 3 of the Constitution, would permit at any subsequent time the repeal or amendment of the supposed contract granting the immunity. Deposit Bank of Owensboro v. Daviess County, 102 Ky., 174; City of Newport v. Masonic Temple Association, 103 Ky., 592; Citizens' Saving Bank v. Owensboro, 173 U. S., 644; Central University of Kentucky v. Walters' Executors, 122 Ky., 65.

Second: A graded common school district is at least a quasi public corporation, and the constitutional inhibition against the impairment of contracts, does not apply to rights obtained through the charters of such corporations. Thompson on Corporations, Section 5382; Covington v. Commonwealth, 107 Ky., 680; Durrett v. Davidson, 122 Ky., 851; Covington v. Commonwealth of Kentucky, 173 U. S., 242. These same authorities also hold that there is no protection from a supposed saving virtue given to the tax payer because of an election whereby he is supposed to have acquired the immunity.

It is furthmore insisted that to permit the collection of this additional tax provided by the act of 1914, would violate section 2 of the Constitution, in that it would be exercising "absolute and arbitrary power over the lives, liberty and property" of the citizens. Just how it is proposed to apply this section to the acts complained of in this case, is beyond our power to grasp. The tax payer, after the additional taxes shall have been collected, will still have his life and his liberty, and as to his property, it is always held under the very foundation principles of government, i. e., subject to the right of the sovereignty to tax it within constitutional limitations for public purposes. There is no more cherished public purpose for which taxes may be collected within such limitations than for the fostering of the common school system of the country; and it has on numerous occasions been determined by this court that a graded common school was a part of the general common school system of the State. Fitzpatrick v. Board of Trustees of Mt. Sterling Pub. Graded Schools, 87 Ky., 132; Jefferies v. Board of Trustees, &c., 135 Ky., 488; Riggs, &c. v. Stevens, County Judge, &c., 92 Ky., 393; Williamstown Graded School District v. Webb, 89 Ky., 264. See also, Board Trustees, &c. v. Graded School District, &c., 155 Ky., 296, and Christopher v. Robinson, Sheriff, &c., 164 Ky., 262.

These authorities also dispose of the contention that this additional tax can not be imposed under section 184 of the Constitution except by a vote of the people, because taxes for common schools under said section may be imposed without a submission of the question to the legal voters. Fitzpatrick v. Board of Trustees of Mt. Sterling, 87 Ky., 132; Durrett v. Davidson, Sheriff, &c., 122 Ky., 851.

From an examination of our Constitution and the opinions of this court, *supra,* together with others which could be cited, it will be found that the General Assembly of this Commonwealth, has the power to, and can without a submission of the question to the voters to be affected, create by due enactment, graded school districts and fix the rate of taxation therein to be collected in aid of such schools. However, out of deference to the particular tax payer, the legislature enacted section 4464 of the Kentucky Statutes and the ones following it, whereby the tax payers might have the privilege of voting upon the question of the establishment or non-establishment

of such school district, as well as the rate of the taxes to be collected therein for graded school purposes. It need not have done this, but because it did enact the sections referred to, granting the privilege to the citizen to vote upon the subject, does not impair its right to exercise the power which it possessed without such election. This is all it did in passing the act complained of in 1914.

In conclusion, it may be stated that the power to tax lies at the very foundation of and is the essence of sovereignty. Without this power the ability to govern and to carry out the functions of government would become paralyzed.

The right, therefore, to levy and collect such taxes as may be necessary to carry out the policies of the government in furtherance of enhancing the betterment of the conditions of its citizens, cannot be bartered away without positive and unerring authority to do so, and which authority must always be found in the fundamental law of the sovereignty, which, in this State, is the Constitution. There is no such authority found in that instrument whereby the immunity sought to be established in this case can be upheld.

It therefore results that the judgment of the court in sustaining the demurrer to the petition, and dismissing it on failure to further plead, is correct, and it is affirmed.